1
2
3
4
5
6
7

8                    **UNITED STATES DISTRICT COURT**

9              **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

10

11   AARON MUNOZ;                          Case No. 8:22-cv-01856-JWH-DFM
     CYNDY PANIAGUA; and
12   MELISSA OLSEN, individually and as
        a representative of a Putative Class   **ORDER REGARDING**
13      of Participants and Beneficiaries, on  **PLAINTIFF'S MOTION FOR**
        behalf of the ALORICA 401(K)          **CLASS CERTIFICATION [ECF**
14      RETIREMENT PLAN,                      **No. 140]; ALORICA**
                                              **DEFENDANTS' MOTION TO**
15              Plaintiffs,                    **EXCLUDE THE REPORT AND**
                                              **TESTIMONY OF RICK RODGERS**
16         v.                                 **[ECF No. 181]; MSSB'S MOTIONS**
                                              **TO JOIN [ECF Nos. 182 & 198]**
17   ALORICA, INC.;
     ALORICA RETIREMENT SAVINGS
18      PLAN COMMITTEE;
     LISA ADAMSHICK;
19   JOYCE TODD-GUERRA;
     CHRIS HUYN;
20   ELIZABETH LAN PAN;
     EMILY KILGORE;
21   RICK HAYES;
     DEON STENNER;
22   MATTHEW VONDETTE;
     DAN FINNEGAN;
23   JAE CHANEY;
     MORGAN STANLEY SMITH
24      BARNEY, LLC; and
     DOES 1-50,
25
                Defendants.
26

27

28

# I.  SUMMARY OF DECISION

Presently before the Court for resolution in this putative class action are the following matters:

- the motions of Plaintiffs Aaron Munoz and Melissa Olsen, individually and on behalf of the Alorica 401(k) Retirement Plan (the "Plan") for class certification;[1]

- the motion of Defendants Alorica Inc. ("Alorica"), the Alorica Retirement Savings Plan Committee (the "Committee"), and individually named Committee members Lisa Adamshick, Joyce Todd-Guerra, Chris Hyun, Elizabeth Lan Pan, Emily Kilgore, Rick Hayes, Deon Stenner, Matthew Vondette, Dan Finnegan, and Jae Chaney (collectively, the "Alorica Defendants") to exclude the opinion of Plaintiffs' retained expert, Rick Rodgers;[2] and

- the motions of Defendant Morgan Stanley Smith Barney, LLC ("MSSB") to join the Alorica Defendants' papers regarding the Rodgers Motion.[3]

The Court conducted a class certification hearing in May 2025.  After considering the papers filed in support and in opposition,[4] as well as the

_____

[1]    Pl.'s Mot. for Class Certification (the "Class Certification Motion") [ECF No. 140].

[2]    Alorica Defs.' Mot. to Exclude the Report and Testimony of Rick Rodgers (the "Rodgers Motion") [ECF No. 181].

[3]    MSSB's Mot. for Joinder of the Rodgers Mot. (the "Motion for Joinder") [ECF No. 182]; MSSB's Mot. for Joinder of the Rodgers Reply (the "Motion for Joinder to the Reply") [ECF No. 198].

[4]    The Court considered the documents of record in this action, including the following papers:  (1) Second Am. Compl. (the "Second Amended Complaint") [ECF No. 65]; (2) Class Certification Motion (including its attachments); (3) MSSB's Opp'n to the Class Certification Motion (the "MSSB Class Certification Opposition") [ECF No. 141]; (4) Alorica Defs.' Opp'n to

argument of counsel at the hearing,[5] the Court orders that Plaintiffs' Class Certification Motion is **GRANTED**, the Alorica Defendants' Rodgers Motion is **DENIED**, and MSSB's Joinders are **DENIED**, for the reasons set forth herein.

## II. BACKGROUND

In this Employee Retirement Income Security Act ("ERISA") case, Plaintiffs allege in essence that Defendants mismanaged Plaintiffs' 401(k) Plan. Plaintiffs assert the following two claims for relief: (1) breach of fiduciary duty of prudence; and (2) breach of fiduciary duties in violation of duty to investigate and monitor investments and covered service providers.[6]

### A. Procedural History

Plaintiffs commenced this action in October 2022,[7] and they filed a First Amended Complaint in January 2023.[8] Alorica moved to dismiss that pleading,[9]

---

the Class Certification Motion (the "Alorica Class Certification Opposition") [ECF No. 142] (including its attachments); (5) Pl.'s Reply in Supp. of the Class Certification Motion (the "Class Certification Reply") [ECF No. 155]; (6) Alorica Defs.' Reply in Opp'n to Class Certification Motion [ECF No. 190] (including its attachments); (7) Decl. of Rick Rodgers ("Rodgers Declaration") [ECF No. 155-1] (including its attachments); (8) Rodgers Motion (including its attachments); (9) Pls.' Opp'n to the Motion to the Rodgers Motion (the "Rodgers Opposition") (including its attachments) [ECF No. 192]; (10) Alorica Defs.' Reply in Supp. of the Rodgers Motion (the "Rodgers Reply") [ECF No. 195]; (11) Motion for Joinder; (12) Motion for Joinder to the Reply.

[5]    Min. Order re Hr'g re Pl.'s Motion for Class Certification ("Class Certification Hearing") [ECF No. 204].

[6]    Second Amended Complaint ¶¶ 220-235.

[7]    Compl. [ECF No. 1].

[8]    First Am. Compl. [ECF No. 21].

[9]    Defs.' Mot. to Dismiss the First Am. Compl. (the "First Motion to Dismiss") [ECF No. 23].

and the Court denied that motion to the extent that it sought dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[10]

Plaintiffs filed a Second Amended Complaint in March 2024, adding MSSB as a Defendant.[11]  Both the Alorica Defendants and MSSB filed motions to dismiss in May 2024.[12]  The Court denied both motions, and it granted Plaintiffs leave to amend their claims against MSSB.[13]  Plaintiffs, however, did not file an amended complaint.  MSSB renewed its motion to dismiss, which the Court denied.[14]

Plaintiffs filed the instant Motion for Class Certification in November 2024.[15]  The Motion is fully briefed.  In April 2025, the Alorica Defendants moved to exclude the testimony of Plaintiffs' expert witness—Rick Rodgers[16]—and MSSB requested to join the Alorica Defendants' motion and reply brief.[17] All of those motions are fully briefed.

**B.     Factual Allegations**

Alorica is the sponsor and administrator of the Plan,[18] which is a defined contribution retirement plan—specifically, a so-called "401(k) plan" under 26 U.S.C. §401(k)—that enables participants to make tax-deferred contributions

---

[10]     Min. Order re Hr'g re the First Motion to Dismiss [ECF No. 44].

[11]     *See* Second Amended Complaint.

[12]     Defs.' Mot. to Dismiss in Part Second Amended Complaint [ECF No. 111]; MSSB's Mot. to Dismiss Second Amended Complaint [ECF No. 116].

[13]     Order Re Alorica Defs.' Mot. to Dismiss in Part and MSSB's Mot. to Dismiss [ECF No. 144].

[14]     Class Certification Hearing.

[15]     Class Certification Motion.

[16]     Rodgers Motion.

[17]     Motion for Joinder; Motion for Joinder to the Reply.

[18]     Second Amended Complaint ¶ 19.

-4-

from their salaries into investment accounts.[19]  The investment accounts of
participants are held in trust, and the plan participants may typically direct the
investments of their accounts from a lineup of investment options presented by
the plan sponsor.[20]

Plaintiffs allege that prior to August 2018, the Plan had no investment
committee to monitor the performance of the Plan's investments or the Plan's
fees.[21]  MSSB—the Plan's investment advisor—monitored the Plan investments
during that time,[22] and non-party MassMutual acted as the Plan's
recordkeeper.[23]  Alorica adopted a Plan Committee Charter in August 2018, and
the Committee first convened in November 2018.[24]  The Committee undertook
a Request for Proposal ("RFP") process in October 2022 and switched the Plan
from MassMutual to non-party Merrill Lynch for recordkeeping services.[25]

Between 2016 and October 2022, MSSB and MassMutual provided the
Alorica Defendants with pooled investment options[26] and advice related to fund
options.[27]  Plaintiffs allege that Defendants imprudently selected a number of
high fee share class plans, even when lower cost class shares of the same funds

---

[19]    *Id.* at ¶¶ 1 & 2.

[20]    *Id.* at ¶ 10.

[21]    *Id.* at ¶ 46.

[22]    *Id.* at ¶ 49.

[23]    *Id.* at ¶ 56.

[24]    *Id.* at ¶ 48.

[25]    *Id.* at ¶ 112.

[26]    *Id.* at ¶ 54.

[27]    *Id.* at ¶¶ 54-57.

were available.[28]  Plaintiffs also assert that the recordkeeping fees paid to
MassMutual exceeded a reasonable amount.[29]

### III.  LEGAL STANDARD

**A.    Rule 23—Class Certification**

A party seeking class certification must establish the following:

(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  After satisfying those four prerequisites—typically referred to as "numerosity," "commonality," "typicality," and "adequacy"—a party must also demonstrate one of the following:  (1)  a risk that separate actions would create incompatible standards of conduct for the defendant or prejudice individual class members not parties to the action; (2) the defendant has treated the members of the class as a class, making appropriate injunctive or declaratory relief with respect to the class as a whole; or (3) common questions of law or fact predominate over questions affecting individual members and that a class action is a superior method for fairly and efficiently adjudicating the action.  *See* Fed. R. Civ. P. 23(b)(1)–(3).  A plaintiff must prove the Rule 23 factors by a preponderance of the evidence.  *See Olean Wholesale Grocery Coop.*, 31 F.4th at 664. "[P]laintiffs may use any admissible evidence" to do so.  *Id.* at 665.

---

[28]    *Id.* at ¶ 54.

[29]    *Id.* at ¶¶ 79-85.

-6-

1    A trial court has broad discretion to grant or deny a motion for class

2    certification.  *See Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir.

3    2010).  However, "[a] party seeking class certification must affirmatively

4    demonstrate compliance with [Rule 23]—that is, the party must be prepared to

5    prove that there are in fact sufficiently numerous parties, common questions of

6    law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  A

7    district court must conduct a "rigorous analysis" that frequently "will entail

8    some overlap with the merits of the plaintiff's underlying claim." *Id.* at 351.

9    **B.     Expert Opinion**

10    When evaluating a motion for class certification, "a district court is not

11    limited to considering only admissible evidence in evaluating whether Rule 23's

12    requirements are met." *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1005 (9th

13    Cir. 2018) (internal citation omitted).  Nevertheless, a "district court need not

14    dispense with the standards of admissibility entirely" at the class certification

15    stage.  *Id.* at 1006.  The court "should evaluate admissibility under the standard

16    set forth in *Daubert*. . . .  But admissibility must not be dispositive.  Instead, an

17    inquiry into the evidence's ultimate admissibility should go to the weight that

18    evidence is given at the class certification stage." *Id.* (referencing *Daubert v.*

19    *Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993)).

20    Expert witness testimony is governed by the Federal Rules of Evidence,

21    which provide:

22    A witness who is qualified as an expert by knowledge, skill,

23    experience, training, or education may testify in the form of an

24    opinion or otherwise if the proponent demonstrates to the court that

25    it is more likely than not that:

26    (a) the expert's scientific, technical, or other specialized knowledge

27    will help the trier of fact to understand the evidence or to determine

28    a fact in issue;

-7-

1    (b) the testimony is based on sufficient facts or data;

2    (c) the testimony is the product of reliable principles and methods;

3    and

4    (d) the expert's opinion reflects a reliable application of the

5    principles and methods to the facts of the case.

6  Fed. R. Evid. 702.

7        The trial court is accorded wide discretion when acting as a gatekeeper for

8  the admissibility of expert testimony. *See Kumho Tire Co., Ltd. v. Carmichael*,

9  526 U.S. 137, 151–52 (1999).  First, the court must determine if a witness has the

10  required expertise, whether it be "knowledge, skill, experience, training, or

11  education."  Fed. R. Evid. 702.  Next, the court must ensure that "any and all

12  scientific testimony or evidence admitted is not only relevant, but reliable."

13  *Daubert*, 509 U.S. at 589.  The expert's opinion must be based upon "scientific

14  knowledge"; opinions based upon unsubstantiated generalizations or opinions

15  not derived by the scientific method must be excluded.  *Daubert v. Merrell Dow*

16  *Pharm., Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995).

17                          **IV. ANALYSIS**

18  **A.    Motion to Exclude the Report and Testimony of Rick Rodgers**

19        In his report, Rick Rodgers opines on whether named Plaintiffs Munoz

20  and Olsen—as well as virtually all of the other participants in the Plan—paid

21  excessive asset-based recordkeeping fees.[30]  The Alorica Defendants move to

22  exclude Rodgers's testimony, arguing that (1) it was not the product of reliable

23  principles and methods; and (2) it was based upon an incomplete set of facts and

24  documents.[31]

25

26

27  [30]    *See generally* Rodgers Declaration.

28  [31]    Rodgers Motion 4:5-7.

-8-

At the core of the Alorica Defendants' argument is a contention that the $40 *per capita* assumption upon which Rodgers relies is incorrect.[32]  However, Rodgers was not opining on whether a $40 *per capita* fee is reasonable—he was opining on whether the named Plaintiffs, and the Plan as a whole, paid more in fees than they would have if a $40 *per capita* fee was "charged to the Plan participants in an appropriate amount based on the assets in each participant's account or through another tiered or graduated structure such that participants paid reasonable fees based on their amount invested in the Plan."[33]

In his report, Rodgers converts the $40 *per capita* fee proposed in the Second Amended Complaint to an asset-based fee, in order to show the fee in basis points.[34]  He then compares the proposed reasonable fee—in basis points—to the fees that the Plan was paying during those same years—in basis points.[35]  Rodgers then applies the same calculations to the fees paid by the named Plaintiffs, showing that each named Plaintiff paid higher fees than he or she would have paid if there was a $40 *per capita* recordkeeping fee.[36]  In essence, Rodgers was performing relatively simple arithmetic.[37]

While an expert may not rely on improper assumptions as a basis for his opinion, *see Daubert*, 509 U.S. at 596, Rodgers did not use $40 as a basis to opine on the reasonableness of a $40 *per capita* fee—he used it merely as a measuring stick.  Accordingly, the Court **DENIES** the Alorica Defendants' motion to exclude the expert report and testimony of Rick Rodgers.

---

[32]  *Id*. at 6:9-12.

[33]  Second Amended Complaint ¶ 83; *see generally* Rodgers Declaration.

[34]  *See* Rodgers Declaration.

[35]  *Id*. at ¶ 20.

[36]  *Id*. at ¶ 21.

[37]  *See generally* Rodgers Declaration.

**B.     Motion for Class Certification**

The Court analyzes Plaintiffs' instant Class Certification Motion in view of their proposed class definition.  That definition is as follows:

> All participants in or beneficiaries of the ALORICA 401(K) RETIREMENT PLAN from six years prior to the filing of the complaint in this matter through December 31, 2022, excluding Defendants and members of the Defendant Committee.[38]

Plaintiffs seek certification pursuant to Rules 23(a) and 23(b)(1).

**1.     Article III Standing**

Before examining whether certification is proper under Rule 23, the court must first determine whether "at least one named class representative has Article III standing." *Melendres v. Arpaio*, 784 F.3d 1254, 1262.  At the class certification stage, standing must be established by a preponderance of the evidence.  *See DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1240 (9th Cir. 2024) (citing *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664-65 (9th Cir. 2022)).  To satisfy the standing requirement, a plaintiff must establish that he has "suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  When a plaintiff asserts a claim regarding an underperforming fund, he can establish injury by showing that he either "(i) invested in at least one of the challenged funds or (ii) [is] challenging a 'plan-wide' decision-making process that injuries all plan participants." *See Coppel v. SeaWorld*, 347 F.R.D. 338, 351 (S.D. Cal 2024) (citing *In re Sutter Health ERISA Litig.*, 2023 WL 1868865, at *5 (E.D. Cal. Feb. 9, 2023)).

---

[38]     Class Certification Motion 11:16-19.

Defendants urge the Court to deny Plaintiffs' Class Certification Motion for lack of Article III standing, arguing that neither of the named Plaintiffs (1) paid excessive recordkeeping fees; (2) was injured by the revenue-sharing share classes; nor (3) invested in a majority of the challenged funds.[39]  MSSB separately contends that the named Plaintiffs do not sufficiently allege that injury was attributable to MSSB.[40]

First, the Court disagrees with the Alorica Defendants' assertion that neither of the named Plaintiffs paid excessive recordkeeping fees because neither Munoz nor Olsen paid more than $40 a year in recordkeeping fees.[41]  The Alorica Defendants' argument rests on a misreading of the Second Amended Complaint, which alleges that the recordkeeping fee would be $40 per participant, charged to the participants based upon the amount of assets in each participant's account (or through a similar structure).[42]  As Rodgers shows in his Declaration, assuming that a $40 *per capita* fee—distributed based upon the amount of assets in each participant's plan—is reasonable, both Munoz and Olsen paid excessive recordkeeping fees.[43]

Although not a direct challenge to standing, the Alorica Defendants also argue that Plaintiffs' proposed $40 *per capita* recordkeeping fee as a measure of "reasonable" is arbitrary.[44]  The Second Amended Complaint cites the 15th Annual NEPC 2020 Defined Contribution Plan & Fee Survey to justify the reasonableness of a $40 *per capita* recordkeeping fee.  At the Class Certification

---

[39]  Alorica Class Certification Opposition 16:22-21:21.

[40]  MSSB Class Certification Opposition 17:9-18.

[41]  Alorica Class Certification Opposition 17:24-18:13.

[42]  Second Amended Complaint ¶ 82.

[43]  Rodgers Declaration ¶ 21.

[44]  Alorica Class Certification Opposition 18:10-13 & 19:13 n. 7.

Hearing, Plaintiffs also pointed to the summary results from the 2022 RFP bid summary to show that that a $40 *per capita* recordkeeping fee would have been reasonable.[45]  Accordingly, at this stage of the litigation, the Court finds that Plaintiffs have sufficiently established that they have suffered an injury-in-fact.

Second, the Court agrees that Olsen—who invested solely in the Stable Value Fund (the "SVF")—does not have standing to assert a share class challenge.  That said, Munoz invested in the Class A shares of the JP Morgan SmartRetirement 2040 Fund.[46]  Therefore, Munoz does have standing to assert a share class challenge, satisfying the need for at least one named class representative to have Article III Standing.

Third, the fact that Munoz and Olsen did not invest in a ***majority*** of the challenged funds is not of import.  Munoz and Olsen each invested in a challenged fund,[47] and, therefore, they have sufficiently established an injury in fact.  Regardless, because Munoz and Olsen are challenging Plan-wide decisions that allegedly injured all Plan participants of a Plan in which they both were a part, they have sufficiently established Article III standing.[48]

Finally, because MSSB was paid most or all of its fee out of the revenue credit from the Plan,[49] Plaintiffs have sufficiently alleged Article III standing to maintain this action against MSSB.

---

[45]    *See generally* Suppl. Decl. of Michael J. Prame [ECF No. 180]; 2022 Request for Proposal Bid Summary [ECF No. 180-1].

[46]    Class Certification Reply 10:10-22; Decl. of Aaron Munoz (the "Munoz Declaration") [ECF No. 140-4] ¶ 2.

[47]    Munoz Declaration ¶ 2; Decl. of Melissa Olsen (the "Olsen Declaration") [ECF No. 140-5] ¶ 2.

[48]    *See generally* Second Amended Complaint.

[49]    Rodgers Declaration ¶ 33.

### 2. Rule 23(a)

#### a. Numerosity

While the numerosity requirement is "not tied to any fixed numerical threshold," courts generally find classes with at least 40 members to be sufficiently numerous. *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010). The Plan had approximately 4,000 putative class members throughout the proposed class period,[50] so the numerosity requirement is met.

#### b. Typicality

To demonstrate that claims are "typical" of the class pursuant to Rule 23(a), a plaintiff must show that the claims are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *DZ Rsrv*, 96 F.4th at 1238 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998), *overruled on other grounds by Wal-Mart*, 564 U.S. at 338). Typicality refers to the ***nature*** of the claims or defenses, "and not to the specific facts from which it arose or the relief sought." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Id.* (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

Defendants argue that the typicality requirement has not been met because Munoz and Olsen each paid less than $40 a year in recordkeeping fees.[51] The Court does not find Defendants' argument persuasive. The fact that Munoz and Olsen paid less than $40 each does not disqualify them as uninjured or atypical of the class. Rather, the Rodgers Declaration shows that when

---

[50] Class Certification Motion 14:5-7.

[51] Alorica Class Certification Opposition 23:5-26:17

1    converted to basis points, both Munoz and Olsen were paying higher fees than

2    they would have paid under a $40 *per capita* fee structure.[52]

3        Therefore, Munoz and Olsen have sufficiently alleged that they, along

4    with their fellow class members, have suffered the same or similar injury—

5    breaches of fiduciary duty and the overpayment of recordkeeping fees in relation

6    to a Plan to which all class members subscribed.[53]  None of the alleged conduct

7    was unique to the named Plaintiffs, as the alleged injuries affected the Plan

8    members collectively.[54]  In sum, the injury alleged by Plaintiffs is typical.

9        The Alorica Defendants also argue that typicality is not satisfied because

10   Munoz and Olsen both took distributions and exited the Plan in 2019.[55]

11   However, even though both Munoz and Olsen exited the Plan in 2019, there is

12   no evidence before the Court that shows any change to the management of the

13   fund until the October 1, 2022, swap in recordkeepers.[56]  As such, the fact that

14   Munoz and Olsen exited the Plan in 2019 does not destroy typicality.

15       The Alorica Defendants further argue that typicality is destroyed

16   following the October 2022 swap in recordkeepers, because the fee structure

17   changed to an asset-based fee arrangement.  The Alorica Defendants are correct

18   in that a variance in fee structure destroys typicality.  *See Baird v. Blackrock*

19   *Institutional Tr. Co., N.A.*, 2020 WL 7389772, at *12 (N.D. Cal. Feb. 11, 2020).

20   At the hearing, Plaintiffs explained that the 2022 change in recordkeepers did

21   not destroy the typicality of the claims or the class period, because the change in

22   recordkeeper fees was not reflected in the management of the fund until after

23

---

24   [52]    Rodgers Declaration ¶¶ 21 & 34.

25   [53]    Class Certification Motion 11:13-18.

26   [54]    *Id.* at 18:4-7.

27   [55]    Alorica Class Certification Opposition 25:12-18.

28   [56]    *See* Second Amended Complaint ¶¶ 32, 54, & 112.

-14-

the final quarter of the year.  The Court agrees that typicality was not destroyed in the time between October 1, 2022, and December 31, 2022, because the change in recordkeepers and recordkeeping fees had not yet taken effect.  Accordingly, the typicality requirement is met.

### c.  Commonality

When examining Rule 23 commonality, the court must look to whether common questions of law or fact would "generate common answers apt to drive the resolution of the litigation."  *Wal-Mart*, 564 at 350.  Here, as in many ERISA cases, the key question is whether Defendants breached their fiduciary duties to the Plan.  *See Munro v. Univ. of S. California*, 2019 WL 7842551, at *3 (C.D. Cal. Dec. 20, 2019).  Plaintiffs assert that some of the central common questions that will drive this litigation include the following:[57]

- whether Defendants are fiduciaries of the Plan;
- whether Defendants breached their fiduciary duty of prudence with respect to the Plan;
- whether Defendants had a duty to monitor other fiduciaries of the Plan;
- whether Defendants breached their duty to monitor other fiduciaries of the Plan;
- the extent of damage sustained by class members and the appropriate measure of damages.

Importantly, the answers to those questions will relate to the conduct of Defendants as to all Plan participants.  Thus, the commonality requirement is satisfied.

### d.  Adequacy

To represent the interests of a proposed class adequately under Rule 23, "[r]epresentatives must be part of the class and possess the same interest and

---

[57]   Class Certification Motion 15:5-17.

suffer the same injury as the class members." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594-95 (1997).  In the Ninth Circuit, a district court must also examine the questions whether "(1) [] the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011).  While class representatives do not need to be financial experts, they must have "some minimal familiarity with the litigation" in order to fulfill their obligations to the class. *In re Tableware Antitrust Litig.*, 241 F.R.D. 644, 649 (N.D. Cal. 2007); *see also Michaels v. Ambassador Grp. Inc.*, 110 F.R.D. 84 (E.D.N.Y. 1986) ("[t]he law does not require the named plaintiff to possess an extensive knowledge of federal securities laws").

The Alorica Defendants contend that Munoz and Olsen are inadequate class representatives because they "have no idea what their role in this lawsuit is, other than to follow their lawyer's lead."[58]  MSSB similarly argues that the named Plaintiffs lack basic knowledge of the Complaint[59] and that they "never spoke with anyone at MSSB, never received documents from MSSB, and lacked knowledge as to what MSSB purportedly did wrong."[60]  The Court finds those arguments unpersuasive.

Munoz and Olsen were both invested in Plan securities during the class period,[61] they understand the theory of the lawsuit,[62] and they have attested to

---

[58]    Alorica Class Certification Opposition 28:23-24.

[59]    MSSB Class Certification Opposition 18:11-13 & 18:23-25.

[60]    *Id.* at 18:4-10.

[61]    Munoz Declaration ¶ 2; Olsen Declaration ¶ 2.

[62]    Munoz Declaration ¶ 3; Olsen Declaration ¶ 3.

-16-

their willingness to continue to prosecute the action on behalf of the class.[63] Granted, neither Munoz nor Olsen is a financial expert, but they do not need to be.

Although the Alorica Defendants pose that Munoz and Olsen "have an irreparable conflict with absent class members"—once again relying on the fact that Munoz and Olsen each paid less than $40 annually in recordkeeping fees— the Court does not find that there is an actual class conflict that is created in this instance.[64]

Christina Humphrey Law, P.C. and Tower Legal Group—the law firms seeking appointment as class counsel—have expressed the willingness, capacity, and capability required to prosecute this action vigorously.[65]  Accordingly, the adequacy requirement, along with the other Rule 23(a) requirements of numerosity, typicality, and commonality, is met.

### 3.    Rule 23(b)(1)

Plaintiffs argue that the certification of this class would be suitable under either Rule 23(b)(1)(A) or (B).[66]  Under Rule 23(b)(1), a class action may be maintained if:

> prosecuting separate actions by or against individual class members
> would create a risk of:
>
> (A)    inconsistent or varying adjudications with respect to
> individual class members that would establish incompatible
> standards of conduct for the party opposing the class; or

---

[63]    Munoz Declaration ¶¶ 5 & 6; Olsen Declaration ¶¶ 5 & 6.

[64]    Alorica Class Certification Opposition 27:1-3; Munoz Declaration ¶ 4; Olsen Declaration ¶ 4.

[65]    *See* Decl. of Christina A. Humphrey ("Humphrey Declaration") [ECF No. 140-2].

[66]    Class Certification Motion 21:15-18.

(B)  adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

Fed. R. Civ. P. 23(b)(1).  In short, "Rule 23(b)(1)(A) considers possible prejudice to a defendant, while 23(b)(1)(B) looks to prejudice to the putative class members."  *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 111 (N.D. Cal. 2008).

Rule 23(b)(1)(A) covers cases in which "the [defendant] must treat all alike as a matter of practical necessity."  *Amchem*, 521 U.S. at 614; *see also Munro*, 2019 WL 7842551, at *8 ("the nature of a defined contribution plan means a fiduciary must treat participants uniformly").  Here, putative class members chose investments from the same set of options selected by the same Plan administrators, and they paid recordkeeping fees in the same manner.[67] Adjudicating separately the claims of thousands of individual class members would very likely produce the same sort of absurd result that Rule 23(b)(1)(A) seeks to avoid:  incompatible standards of conduct for Defendants that could not be individually implemented due to the collective nature of the Plan itself.

Alternatively, the Court finds that certification would also be appropriate under Rule 23(b)(1)(B).  District courts in the Ninth circuit often certify ERISA classes under Rule 23(b)(1)(B).  *See Munro*, 2019 WL 7842551, at *9; *see also Marshall v. Northrop Grumman Corp.*, 2017 WL 6888281, at *10 (C.D. Cal. Nov. 2, 2017) (collecting cases).  Indeed, the Supreme Court describes a "classic example" of a Rule 23(b)(1)(B) class to include "actions charging 'a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class' of beneficiaries, requiring an accounting or similar procedure 'to restore the subject of the trust.' "  *Ortiz v. Fibreboard Corp.*, 527

---

[67]    *Id.* at 22:11-14.

-18-

U.S. 815, 834 (1999).  As in many ERISA cases prosecuted in district courts in this circuit and nationwide—the shoe fits.  Plaintiffs in this action allege that the fiduciaries of the Alorica Plan have breached their duties to thousands of Plan participants and to the Plan itself.  If proven, the claims will affect every Plan participant, fitting squarely in the scenario envisioned by Rule 23(b)(1)(B).

The Alorica Defendants raise no challenge to certification under Rule 23(b).  MSSB, however, argues that Plaintiffs fail to satisfy the predominance requirement of Rule 23(b)(3).[68]  Because the class is certified under Rule 23(b)(1), and not Rule 23(b)(3), a question of predominance does not bar the certification of the class.  *See Wal-Mart*, 564 U.S. at 376 (Ginsburg, J., concurring in part) ("Individual differences should not bar a Rule 23(b)(1) or Rule 23(b)(2) class, so long as the Rule 23(a) threshold is met."); *see also Amchem*, 521 U.S. 623 n.19 (Rule 23(b)(1)(B) "does not have a predominance requirement").

For the reasons stated above, the Court concludes that the putative class satisfies the requirements of Rule 23(b)(1)(A), or, alternatively, Rule 23(b)(1)(B).

## C.    Appointment of Class Counsel

When certifying a class, the court must appoint class counsel.  *See* Fed. R. Civ. P. 23(g).  Under Rule 23(g), when appointing class counsel, a court must consider:

(i) the work counsel has done in identifying or investigating potential claims in the action;

(ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii) counsel's knowledge of the applicable law; and

---

[68]    MSSB Class Certification Opposition 24:3-26.

(iv) the resources that counsel will commit to representing the class;
*Id.*

Christina Humphrey Law, P.C. and Tower Legal Group have extensive experience in handling class actions and the types of claims asserted in this case,[69] and they have satisfactorily demonstrated their knowledge of the applicable law.[70] Further, there appear to be no conflicts between counsel and the putative class.[71] Thus far, counsel have actively and vigorously pursued recovery on behalf of Plaintiffs and the Plan, and they have attested that they will continue to do so.[72] Accordingly, the Court deems it appropriate to appoint Christina Humphrey Law, P.C. and Tower Legal Group as class counsel.

## V. DISPOSITION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1. Plaintiffs' instant Class Certification Motion [ECF No. 140] is **GRANTED**. The following class is **CERTIFIED**:

All participants in or beneficiaries of the ALORICA 401(K) RETIREMENT PLAN from six years prior to the filing of the complaint in this matter through December 31, 2022, excluding Defendants and members of the Defendant Committee.[73]

2. Plaintiffs Aaron Munoz and Melissa Olsen are **APPOINTED** as class representatives.

---

[69]    Humphrey Declaration ¶ 6; Decl. of James A. Clark ("Clark Declaration") [ECF No. 140-3] ¶¶ 11-13.

[70]    Humphrey Declaration ¶¶ 4-5; Clark Declaration ¶ 13.

[71]    Humphrey Declaration ¶ 8; Class Certification Motion 21:1-2.

[72]    Humphrey Declaration ¶¶ 3-31; Clark Declaration ¶ 13; Class Certification Motion 21:10-13.

[73]    Class Certification Motion 11:16-19.

1   3.  Christina Humphrey Law, P.C. and Tower Legal Group are

2 **APPOINTED** as class counsel.

3   4.  The Alorica Defendants' Motion to Exclude Expert Testimony of

4 Rick Rodgers [ECF No. 181] is **DENIED**.

5   5.  To the extent that MSSB seeks the same relief as the Alorica

6 Defendants in relation to the Expert Testimony of Rick Rodgers [ECF Nos. 182

7 & 198], MSSB's request is **DENIED**.

8   **IT IS SO ORDERED.**

9

10 Dated:_____
   September 22, 2025

11           John W. Holcomb
           UNITED STATES DISTRICT JUDGE